Sandra Lee **BECKER**, a minor, et al.

v.

**John R. THOMPSON**, Solicitor of the Civil and Criminal Court of DeKalb County, et al.

Civ. A. No. 14260.

United States District Court,
N. D. Georgia,
Atlanta Division.

March 19, 1971.

Howard Moore Jr., Atlanta, Ga., for plaintiffs.

Robert E. Mozley, Decatur, Ga., Dock H. Davis, Atlanta, Ga., for defendants.

## ORDER

ALBERT J. HENDERSON, District Judge.

By order dated January 8, 1971, this court stayed further proceedings in the above styled case until the United States Supreme Court had opportunity to consider several cases thought to pertain to issues herein relevant. Two of the awaited decisions, Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) and Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971), were recently announced in conjunction with several others, the totality of which makes further staying of this action clearly inappropriate. Accordingly, the issues in this case will be considered in light of the most recent pronouncements of the Supreme Court.

The plaintiffs, in this class action suit, seek to have the court declare unconstitutional, as applied, Ga.Code Ann. § 26–1503 (Acts 1968, p. 1249 et seq.); to enjoin the criminal prosecution presently pending against the plaintiff, Sandra Lee Becker; further, to enjoin future enforcement of said statute as to these plaintiffs; and for a declaration of the plaintiffs' rights in the distribution of handbills in a shopping center. Jurisdiction is based on 28 U.S.C. §§ 1343, 2201 and 2202, and 42 U.S.C. § 1983 et seq.

This court denied the plaintiffs' motion for a temporary restraining order, pursuant to a hearing on October 20, 1970. Plaintiffs' motion for preliminary and permanent injunction and declaratory relief came on for hearing on October 28, 1970, at which time all parties to the dispute stipulated their willingness to consider it the final hearing in the present action. This order is based on the evidence then presented and the stipulation of the parties submitted to the court.

The basic issue presented is the plaintiffs' desire to distribute handbills at the North DeKalb Shopping Center, located in a partially residential, partially commercial area in the unincorporated portion of DeKalb County, Georgia, approximately four miles from the City of Decatur, Georgia.

On Thursday, October 8, 1970, the plaintiffs and others, individually and as representatives of the Atlanta Mobilization Committee, stood on the exterior sidewalk of the North DeKalb Shopping Center and distributed handbills inviting people to "March Against the War" and to abstain from purchasing lettuce at the Colonial Supermarket ("because this inflationary war continues to starve Mexican lettuce pickers"). Pursuant to the shopping center's regulations, adopted shortly after the center's opening in 1965, the center's maintenance man and security guard told the plaintiffs that they would have to cease their distribution and leave. The plaintiffs refused and, in accordance with the guard's standing instructions, the on-site manager was notified. He, in turn, called the DeKalb County Police. The police advised the plaintiffs that they would be arrested should they persist in their actions. In response to this admonition by the police officers, the plaintiffs departed.

The plaintiffs, however, returned on Saturday, October 10, 1970, accompanied by Messrs. William Ginilliat and John R. Meyer, staff attorneys for the Emory Legal Services Center. Mr. Meyer brought a camera for the avowed "prob-

ability of later use in some litigation". See Transcript pp. 30–31. The defendant, Reynolds, explained to Mr. Ginilliat, pursuant to a request for permission, that the center's regulations prohibited the distribution of leaflets on its property. Further, Mr. Ginilliat was informed that if the plaintiffs persisted in their efforts to pass out the leaflets he would have no alternative but to summon the DeKalb County Police.

Despite this warning, and while Mr. Meyer took pictures, the plaintiffs began distributing anti-war leaflets on the sidewalk in front of the Colonial Supermarket. When the manager and security guard discovered that leaflets were being distributed, the plaintiffs were again advised that their actions were in violation of the regulations of the shopping center, and that they would have to cease their activity or police assistance would be requested. Upon the plaintiffs' refusal, the defendant, Reynolds, called the DeKalb County Police. Although the plaintiffs were told that they would be arrested pursuant to the complaint of the shopping center, the plaintiff, Becker, refused to discontinue her handbilling, and was thereby arrested on a charge of criminal trespass. Ga. Code Ann. § 26–1503. The plaintiff, Steffel, ceased his activity in this regard, allegedly because he did not desire to be arrested under the criminal trespass statute.

The plaintiffs contend that they wish to continue their activities in the distribution of handbills at the shopping center, but will refrain from doing so solely because they fear warrants for their arrest will be sworn out against them, and that they may be arrested and prosecuted for violating the Georgia criminal trespass statute. Those defendants representing the shopping center indicate that they will continue to insist on the strict enforcement of their regulations, and, therefore, will repeatedly summon the police, swear out warrants for the plaintiffs' arrest, and pursue active prosecution under the trespass statute. The state defendants, however, assert that an incident by incident decision will be made based on whether the facts of a particular case show a violation of the law.

■ This court, in its order dated January 8, 1971, anticipated the subsequent decisions of the Supreme Court when it refused to enjoin the then pending prosecution of the plaintiff, Becker. This court cited Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), which upheld, with ample clarity, the long standing policy of the federal courts to refrain from interfering with the orderly administration of state justice. The correctness of this holding has now been shown by the decisions of the Supreme Court in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Samuels v. Mackell, *supra*; Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein, *supra;* and Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971). In what will undoubtedly become, in years to come, one of the most frequently interpreted judicial phrases, the Court held that,

> . . . [A] federal court must not, save in exceptional and extremely limited circumstances, intervene by way of either injunction or declaration in an existing state criminal prosecution. Such circumstances exist only when there is a *threat of irreparable injury* "*both great and immediate*". (emphasis added).

Younger v. Harris, *supra*, at p. 56 of 401 U.S., and p. 757 of 91 S.Ct. With reference to whether this court should nevertheless consider Becker's demand for declaratory relief, the following quotation is found dispositive,

> We therefore hold that, in cases where the state criminal prosecution was begun prior to the federal suit, the same equitable principles relevant to the propriety of an injunction must be taken into consideration by the

federal district courts in determining whether to issue a declaratory judgment, and that where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well.

Samuels v. Mackell, *supra*, at p. 73 of 401 U.S. and p. 768 of 91 S.Ct. Lastly in finding that the plaintiff, Becker, has not met the prerequisites of "irreparable injury", the court applies the following test to the facts herein,

> . . . [E]ven irreparable injury is insufficient unless it is "both great and immediate". *Fenner, supra*, 271 U.S. 240 [46 S.Ct. 492, 70 L.Ed. 927] (1926). Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered "irreparable" in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution. See, *e. g.*, Ex Parte Young, *supra*, 209 U.S. 123, at 145–147, [28 S.Ct. 441, 52 L.Ed. 714.]

Younger v. Harris, *supra*, at p. 46 of 401 U.S. and p. 751 of 91 S.Ct.

Based upon these holdings, the court refuses to grant either injunctive or declaratory relief to the plaintiff Becker.

■ A slightly different question, however, is presented as to the plaintiff Steffel and the other members of the class he seeks to represent, inasmuch as no criminal prosecution is now pending against them. The Supreme Court, while specifically declining to express its view as to the propriety of giving injunctive or declaratory relief from *future* state criminal prosecutions, did state its considered opinion as to when federal intervention is justified.

In the process of distinguishing and limiting Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), the Court in Younger v. Harris, *supra*, recognized that there may exist at some time an extraordinary occasion where irreparable injury could be shown in the absence of bad faith and harassment. See, Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941), but as to the majority of situations, stated that,

> . . . the possible unconstitutionality of a statute "on its face" does not in itself justify an injunction against good faith attempts to enforce it, and that appellee Harris has failed to make any showing of bad faith, harassment, or any other unusual circumstances that would call for equitable relief.

Younger v. Harris, *supra*, at p. 54 of 401 U.S. and p. 755 of 91 S.Ct. Further, in Boyle v. Landry, *supra*, the Court refused to consider the plaintiffs' allegations challenging the constitutionality of an uncharged state "intimidation" statute because there was no showing that plaintiffs were in any "jeopardy of suffering irreparable damages if the State is left free to prosecute under the intimidation statute in the normal manner." *Id.* at p. 81 of 401 U.S. and p. 760 of 91 S.Ct. Finally, the Court vacated a district court decision in Dyson v. Stein, *supra*, which involved, as here, a class action suit, and, the grant of injunctive and declaratory relief. The holding required the lower court to make findings of fact as to a claim of threatened irreparable injury, prior to granting the class any relief.

■ The impact of these opinions is clearly that the district court must not hypothesize as to what the consequences of a future arrest might be, and that in the absence of a showing of bad faith enforcement and/or harassment the federal judiciary should refrain from interference in the orderly functioning of the state criminal process. In the case at bar, no meaningful contention can be made that the state has or will in the future act in bad faith. Rather, it appears that the plaintiffs, by their conduct and the conduct of their attorneys, intended to seek a federal court test. Without the rudiments of an active con-

troversy between the parties, the court finds that the equitable bases for considering this claim to be lacking.

Accordingly, the plaintiffs' prayers for injunctive and declaratory relief are denied, and judgment is hereby entered in favor of the defendants.