**Sandra Lee BECKER, etc., et al.,**
**Plaintiffs,**

**Richard Guy Steffel, Plaintiff-Appellant,**

**v.**

**John R. THOMPSON, etc., et al.,**
**Defendants-Appellees.**

No. 71–1856.

United States Court of Appeals,
Fifth Circuit.

May 3, 1972.

Rehearing and Rehearing En Banc
Denied July 20, 1972.

Howard Moore, Jr., William H. Traylor, John R. Myer, Atlanta, Ga., for plaintiff-appellant.

Robert E. Mozley, George P. Dillard, Decatur, Ga., Dock H. Davis, Atlanta, Ga., for defendants-appellees.

Before TUTTLE, GEWIN and DYER, Circuit Judges.

DYER, Circuit Judge:

In this appeal we must meet the issue explicitly reserved in Samuels v. Mackell, 1971, 401 U.S. 66, 91 S.Ct. 764, 27 L. Ed.2d 688, that is, the propriety of granting declaratory relief when no state criminal proceeding is pending at the time the federal suit is begun. Finding no bad faith enforcement or harassment by the state, the district court denied declaratory relief and entered judgment in favor of the defendants, 334 F.Supp. 1386. We affirm.

The facts are undisputed. The action takes place at the North DeKalb Shopping Center. It is a large, modern, retail shopping area located in a partially residential, partially small business area of unincorporated North DeKalb County, Georgia. It contains a large parking lot and a totally covered air conditioned building complex housing more than sixty retail tenants surrounded by a wide exterior sidewalk.

Since its opening in 1965 the Center has enforced its regulations against handbilling because it desired to maintain an attractive place for its customers to shop without interference or irritation. The Boy Scouts and local garden clubs are permitted to use the booths inside the Mall for bake sales and to give information concerning their activities.

On October 8, 1970, plaintiffs Steffel, Becker and others stood on the exterior sidewalk of the Center and distributed hand bills informing passersby of a meeting protesting the war in Indo-China. The plaintiffs were soon instructed by a Center private security guard that they could not distribute the hand bills and were ordered to leave. When they refused the DeKalb County Police were called. When the police arrived plaintiffs were informed that, if they did not stop distribution of hand bills, they would be arrested. The plaintiffs left and no arrests were made.

On October 10, 1970, an attorney for the plaintiffs asked the manager of the Center to permit them to distribute anti-war handbills. Permission was refused. Nevertheless, Steffel and Becker returned to the Center and again, in an orderly fashion, distributed handbills from the exterior sidewalk while other members of the group made photographs. Steffel and Becker were again advised by the security guard and the Center's manager that they could not distribute the handbills and that, if they persisted in doing so, they would be arrested. Ultimately the DeKalb County police arrived and told Becker and Steffel to discontinue their activity or they would be arrested. Steffel left to avoid arrest. Becker continued to distribute the handbills and was arrested on a

charge of criminal trespass, pursuant to the provisions of Ga.Code § 26–1503.[1] Becker was released on bond. Subsequently a preliminary hearing was held and she was arraigned.[2]

In the court below Steffel testified that he had not returned to the Center to handbill since the time of Becker's arrest because he did not "want to be arrested that badly."

Becker and Steffel filed this civil class action for declaratory and injunctive relief against Hudgins, the owner of the Center, Reynolds, his agent, Solicitor Thompson and Police Chief Hand of DeKalb County attacking the constitutionality of the Georgia criminal trespass statute as applied to them and their class in the distribution of hand bills at the Center, relying on Amalgamated Food Employees Union v. Logan Valley Plaza, Inc., 1968, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 and Marsh v. Alabama, 1946, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265.

The district court denied Becker's prayer for injunctive relief on the basis of Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, and for declaratory relief, on the basis of Samuels v. Mackell, *supra,* because of the pending state criminal prosecution against her. No appeal has been taken by Becker.

The district court also denied both the injunctive and declaratory relief sought by Steffel, against whom no state criminal prosecution was pending.

Steffel's argument on brief points up the narrow issue presented on appeal as follows:

The District Court was correct in applying this "bad faith/harassment" test to appellant Steffel's request for

injunctive relief against future threatened state court criminal prosecutions. See for example, Younger v. Harris, 401 U.S. at 44–45 [91 S.Ct. 746] where the Court stated that "These principles made clear in the *Fenner* case [Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927] [great and immediate irreparable loss required to justify enjoining a state prosecution] have been repeatedly followed and reaffirmed in other cases involving threatened prosecutions. (citing cases including Douglas v. City of Jeannette, 319 U.S. 157, [63 S.Ct. 877, 87 L.Ed. 1324] (1943).

The District Court erred, however, in applying this same stringent test to Appellants' request for declaratory relief. * * * [A] different balance is to be struck concerning questions of federal-state comity where federal declaratory relief is sought and no state prosecution is pending against the plaintiff.

Stated another way, is the propriety of granting a declaratory judgment concerning threatened future criminal prosecution determined by the same test as the propriety of granting injunctive relief, i. e., bad faith harassment? Younger v. Harris, *supra.* May we transpose to this case, where no state prosecution was pending, what was said about declaratory relief in Samuels v. Mackell, *supra,* where a state prosecution was pending:

[T]he same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment, and * * * where an injunction would be impermissible under

---

1. Ga.Code § 26–1503 provides:
   Criminal trespass * * *
   (b) A person commits criminal trespass when he knowingly and without authority:
       (3) Remains upon the land or premises of another person, or * * * after receiving notice from the owner or rightful occupant to depart.

   (c) A person convicted of criminal trespass shall be punished as for a misdemeanor. (Acts 1968, pp. 1249, 1285; 1969, pp. 857, 859.)

2. At oral argument the Court was informed that Becker's trial had been indefinitely continued, presumably awaiting the disposition of this appeal.

these principles, declaratory relief should ordinarily be denied as well. *Id.* 401 U.S. at 73, 91 S.Ct. at 768.

*In limine* we note that it was emphasized in the "Supreme Court's February sextet" [3] that the resolution of the problems involved when a federal court is asked to give injunctive or declaratory relief from future state criminal prosecution was left to a later day. Thus the court clearly did not determine the propriety of federal declaratory relief against threatened criminal prosecution.

While the question was reserved, *Younger* made it clear beyond peradventure that irreparable injury must be measured by bad faith harassment [4] and such test must be applied to a request for injunctive relief against *threatened* state court criminal prosecution. In fact, as we pointed out, Steffel concedes that this principle was viable even before *Younger* and was reiterated in it by the Court's reliance on Fenner v. Boykin, 1926, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927, and Douglas v. City of Jeannette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324. These cases underscore that "the determination of questions of criminal liability under state law by a federal court of equity, are to be supported only on a showing of danger of irreparable injury." *Douglas* at 163, 164, 63 S.Ct. at 881.

In Samuels v. Mackell, *supra*, it was made unequivocally clear that "ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the long standing policy limiting injunctions was designed to avoid." *Id.* 401 U.S. at 72, 91 S.Ct. at 767. This is so, of course, because the declaratory judgment may serve as the basis for a subsequent injunction and "even if the declaratory judgment is not used as a basis for actually issuing an injunction, the declaratory relief alone has virtually the same practical impact as a formal injunction would." *Id.* Again the Court reserved the question concerning threatened as opposed to pending state prosecutions.

If the practical effects of injunctive and declaratory judgment remedies are identical because they result in the disruption of a state's enforcement of its criminal statutes when a criminal prosecution is pending, and therefore bad faith harassment must be shown before either remedy may issue, and if, as we have seen, the same test of bad faith harassment is prerequisite to injunctive relief in a threatened criminal prosecution, it follows that a like showing must be made for declaratory relief in a threatened prosecution. Although "The holdings of *Younger* and *Samuels* are narrow [and] limited to the propriety of declaratory or injunctive relief while state criminal proceedings are pending * * * Justice Black's discussion of *Dombrowski* [Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22] has much broader implications, suggesting that even when state proceedings have not yet begun, injunctive relief—as authorized by *Dombrowski*—or declaratory relief—as authorized by Zwickler v. Koota, [389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444] a 1967 case relying heavily on *Dombrowski*—may be conditioned on the same bad faith requirements. * * * In short, the reasoning in *Younger* would appear to ignore any distinction between pending and threatened proceedings, and make denial of federal relief obligatory in both situations unless bad faith enforcement can be shown." (footnotes omitted) 85 Harv.L.Rev. 304, November, 1971.

In Wulp v. Corcoran, 1 Cir. 1972, 454 F.2d 826, the Court, in a threatened state criminal prosecution case, held that declaratory relief was available without a showing of bad faith harassment. It

---

3. LeFlore et al. v. Robinson et al., 5 Cir. 1971, 446 F.2d 715 (Judge Goldberg, specially concurring opinion).

4. "There may, of course, be extraordinary circumstances in which the necessary ir-

reparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment." Younger v. Harris, *supra*, 401 U.S. at 53–54, 91 S.Ct. at 755. We do not find any extraordinary circumstances present here.

reasoned that there were significant differences in the appropriateness of injunctive and declaratory relief between pending and preprosecution contests. In other words, *Wulp* cannot be read in any way but that it construed the *Younger* sextet to mean that bad faith harassment had to be shown for injunctive or declaratory relief in pending prosecutions, but is not required to be shown for either remedy when the prosecution is threatened but not pending.

In our view this not only effectively overrules Ex parte Young, 1908, 209 U. S. 123, 28 S.Ct. 441, 52 L.Ed. 714; Fenner v. Boykin, 1926, 271 U.S. 240, 46 S. Ct. 492, 70 L.Ed. 927; Spielman Motor Sales Co. v. Dodge, 1935, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322; Beal v. Missouri Pa. R. Co., 1941, 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577; Watson v. Buck, 1941, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416; Williams v. Miller, 1942, 317 U.S. 599, 63 S.Ct. 258, 87 L.Ed. 489; and Douglas v. City of Jeannette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 but also revives the misconception concerning the broad sweep of *Dombrowski* that *Younger* took pains to point out and disapprove.

It is, of course, self-evident that where state prosecutions were pending *Younger* and *Samuels* established a limitation on the use of the Declaratory Judgment Act, 28 U.S.C.A. § 2201, to those cases where bad faith harassment was shown. The same limitation on the use of the Act necessarily applies in preprosecution cases. It is here that we part company with *Wulp, supra,* and Mr. Justice Brennan's views in Perez v. Ledesma, 401 U.S. 82, 93, et seq., 91 S.Ct. 674, 27 L.Ed.2d 701 (the majority of the Court not having considered this issue).

*Younger* laid great stress upon *Buck, supra,* that:

> Federal injunctions against state criminal statutes, either in their entirety or with respect to their separate and distinct prohibitions, are not to be granted as a matter of course, even if such statutes are unconstitutional. "No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid." Beal v. Missouri Pacific Railroad Corp., 312 U.S. 45, 49 [61 S.Ct. 418, 420, 85 L.Ed. 577].

There is, of course, no suggestion that the principles enunciated in *Buck* are not still viable.

If "the propriety of declaratory and injunctive relief should be judged by essentially the same standards", then in preprosecution cases there must be a showing of bad faith harassment for the granting of declaratory as well as injunctive relief. Cooley v. Endictor, 5 Cir. 1972, 458 F.2d 513.

We conclude that under the circumstances of this case, even though no state prosecution was pending against Steffel, since there was no showing of bad faith harassment, he was not entitled to a declaratory judgment.

The judgment of the district court is Affirmed.

TUTTLE, Circuit Judge (concurring in result).

I concur in the result reached by the majority. However, on the facts of this case, I feel that nearly all of what the majority has said is unnecessary to a decision in this case, and is thus obiter dictum. Unlike Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its companion cases, the case we have before us does not involve a *pending state court prosecution.* Nor does it involve a statute which is facially defective in any way; nor does the complaint contain any allegation of "bad faith harassment." Under these facts it is simply unnecessary to speculate on what effect the "February Sextet" had on Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), and its progeny, or in effect, to guess how the Supreme Court would rule on an is-

sue it explicitly stated that it was *not* deciding.[1]

In short, since I feel that under the facts of this case, Dombrowski itself would not justify federal intervention, I decline the invitation to broaden unnecessarily my decision by speculating on what the Supreme Court may or may not ultimately do.

In Dombrowski v. Pfister, supra, the court held that the allegation of bad faith prosecution stated a claim under 42 U.S.C. § 1983 and that if this allegation was proven to be true, an injunction must be granted. In addition, the court stated that the Louisiana statutes involved in that case were so vague and overbroad as to be highly susceptible to unconstitutional application. Thus, their very existence tended to have a "chilling effect" upon the exercise of first amendment rights involved in that case. The court therefore issued another injunction restraining state officials from enforcing or threatening to enforce the statute involved against anyone until it received a narrowing construction in a state declaratory judgment proceeding. Regarding the propriety of such Federal Court intervention, the court stated:

> "We hold the abstention doctrine is inappropriate for cases as the present one where, unlike Douglas v. City of Jeannette, statutes are justifiably *attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities.*" 380 U.S. at 489–490, 85 S.Ct. at 1122.

These same principles were reiterated in Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), a case, which like the one at bar, involved the propriety of Federal Court intervention when only a declaratory judgment was sought.

Both Dombrowski and Zwickler require that we do not intervene in the case at bar. We are not dealing with a statute that is facially defective in any way. Moreover, there is nothing in this record that would support a finding that this threatened application of an otherwise valid statute was "for the purpose of discouraging protected activities." (Another way of saying "for bad faith harassment.") Thus, this case seems to fall directly under the Supreme Court's ruling in Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968). In that case, the Court held that where a challenged state law was not facially defective in any way and the record did not establish any bad faith, this was therefore:

> "... not a case in which '... a federal court of equity by withdrawing the determination of guilt from the state courts could rightly afford [appellants] any protection which they could not secure by prompt trial and appeal pursued to this Court." Cameron at 620, 88 S.Ct. at 1340, citing Douglas v. City of Jeannette, 319 U.S. at 164, 63 S.Ct. at 887.

This is precisely the situation in the case at bar. I, therefore, feel that we do not need to extend Younger. The issue, as I frame it, is fully cognizable within the parameters of what the Supreme Court has already said. To state, as does the majority, that "in this appeal *we must* meet the issue explicitly reserved in Samuels v. Mackell, 401 U.S. 66 [, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971)]" is, with deference, in my opinion, simply not the case.

Since, however, the majority has made such a broad pronouncement on the meaning of Younger, albeit in a case where the facts do not justify so broad a decision, I cannot help but note that the conclusion reached seems, to my mind,

---

1.  Justices Stewart and Harlan, concurring, explicitly stated that:
    "Finally, the Court today does not resolve the problems involved when a federal court is asked to give injunctive or declaratory relief from *future* state criminal prosecutions." Younger, 401 U.S. at 55, 91 S.Ct. at 757.

In addition, Justices Brennan, White and Marshall, concurring, distinguish Younger from Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), stating that "in *Zwickler* no state proceeding was pending at the time jurisdiction attached in the federal court," 401 U.S. at 57, 91 S.Ct. at 755 (footnote).

entirely wrong. Attempting to hold that even when there is *no state court prosecution pending*, a litigant must show bad faith harassment to give federal jurisdiction in the case of *facial invalidity* of the statute involved, and regardless of the fact that First Amendment rights may indeed be chilled, represents more than the great deference we must and should show to our state court brethren. It represents the abdication of our duty as federal judges where called on to decide what is solely a federal question. Closing yet another federal door in the face of a litigant raising *only federal questions* is, to my mind, federalism turned on its head.[2]

Indeed, as Justice Brennan has pointed out in his concurring opinion in Perez v. Ledesma, 401 U.S. 82, 104, 91 S.Ct. 674, 686, 27 L.Ed.2d 701 (1971):

> ". . . *considerations of federalism are not controlling* when no state prosecution is pending and the only question is whether declaratory relief is appropriate. In such case, the congressional scheme that makes the federal courts *the* primary *guardians of constitutional rights*, and the express congressional authorization of declaratory relief, afforded because it is a less harsh and abrasive remedy than the injunction, become the factors of primary significance." (emphasis added.)

Moreover, as the First Circuit stated in a case limiting its application of Younger to situations where prosecutions were actually pending:

> "While Mr. Justice Brennan's views in Perez v. Ledesma, 401 U.S. at 93, 91 S.Ct. 674 et seq., did not prevail in view of the majority's recognition of a

prior pending state prosecution, 401 U.S. at 86, n.2, 91 S.Ct. 674, we cannot dismiss the Congressional history reviewed by him, 401 U.S. at 112–115, 91 S.Ct. 674, expressly contemplating resort to the milder, less intrusive, and more timely remedy of a declaratory judgment to test criminal laws, both state and federal. See e. g., Lewis v. Kugler, 446 F.2d 1343, 1347–1348 (3d Cir. 1971); Anderson v. Vaughn, 327 F.Supp. 101, 102 (D. Conn.1971) (three-judge court). Were the law to be that a plaintiff could not obtain a declaratory judgment that a local ordinance was unconstitutional when no state prosecution is pending unless he could allege and prove circumstances justifying a federal injunction of an existing state prosecution, the Federal Declaratory Judgment Act would have been pro tanto repealed." Wulp v. Corcoran, 454 F.2d 826, 832 (1st Cir. 1972).

The majority in this opinion attempts to effectuate such a repeal at least as to threatened state criminal prosecutions. It reads Younger and its companion cases as equating declaratory with injunctive relief in entirely different settings. That is to say the practical effects of declaratory relief are supposedly the same as those of injunctive relief even if in one case a prosecution is pending, and in another it is not. Because quite different considerations of federalism are involved when no prosecution is pending, I cannot agree with the majority's equation of these two situations.

Again, as the First Circuit has noted:

> "There is a clear and significant difference in the appropriateness of federal relief between pending and pre-

---

2. It is interesting to note that in narrowing the number of cases in which removal to the Federal Courts would be granted in Civil Rights cases, Justice Stewart specifically pointed to one remedy this court seeks to cut off today. In Greenwood v. Peacock, 384 U.S. 808, at 829, 86 S.Ct. 1800, 1813, 16 L.Ed.2d 944, the Court stated:

> "But there are many other remedies available in the federal courts to redress the wrongs claimed by the indi-

vidual petitioners in the extraordinary circumstances they allege in their removal petitions. If the state prosecution or trial on the charge of obstructing a public street or any other charge would itself clearly deny their rights protected by the First Amendment, they may under some circumstances obtain an injunction in the federal court. See Dombrowski v. Pfister, 380 U.S. 479 [, 85 S.Ct. 1116, 14 L.Ed.2d 22]."

prosecution contexts. The policies militating against intervention, canvassed in Younger v. Harris [supra, 401 U.S. at 43–44, 91 S.Ct. 746], do not apply at all or apply with greatly diminished strength in the latter context. The traditional restraint of equity, calculated to present erosion of the role of the jury and avoid a duplication of legal proceedings is not here present. And considerations of comity do not push nearly so strongly where there is no ongoing state proceeding to be aborted." Wulp, supra, at 832.

In addition, when a statute is being challenged as unconstitutional on its face (I again emphasize that this is not really in issue in this case), a Federal Court is not asked to make findings of fact in place of the state court. Rather, the Federal Court is asked to rule on only federal questions. In such a situation, I point to what the Supreme Court has stated in Zwickler:

"Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility equally with the federal courts, '. . . to guard, enforce, and protect every right granted or secured by the constitution of the United States . . .' Robb v. Connolly, 111 U.S. 624, 637 [, 4 S.Ct. 544, 551, 28 L.Ed. 542]. *We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for*

*adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum.*'" Zwickler v. Koota, 389 U.S. 241, at 248, 88 S.Ct. 391 at 395, citing Stapleton v. Mitchell, D.C., 60 F.Supp. 51, 55.

Since this is not a case involving a facially void statute, there must be bad faith harassment to provide federal jurisdiction. Here there was none shown. I think that is all we need say, in affirming the judgment of the trial court.[3]

3. Since the original publication of these opinions and the judgment of this Court, the Supreme Court has announced its opinion in Lloyd Corporation Ltd. v. Tanner, —— U.S. ——, 92 S.Ct. 2219, 33 L.Ed.2d 131. The Court there held with respect to a shopping center like the North De Kalb Shopping Center that there had been "no such dedication of Lloyd's privately owned and operated shopping center to public use as to entitle respondents to exercise therein the asserted First Amendment rights". —— U.S. ——, 92 S.Ct. 2229. Thus, it now appears, even more clearly than when my separate opinion was written, that this Court's excursion into the field left open by the Supreme Court in Samuels v. Mackell, supra, is totally unnecessary. All that it is necessary for this Court to do with this appeal is to affirm the judgment of dismissal by the trial court on the ground that no constitutional deprivation has been alleged. All else is pure *dictum.*