**The Reverend Temperance E. WRIGHT, Plaintiff-Appellant,**

**v.**

**The STATE OF FLORIDA et al., Defendants-Appellees.**

**No. 73–2063.**

United States Court of Appeals, Fifth Circuit.

June 13, 1974.

Arthur W. Tifford, Ronald B. Gilbert, Ronald I. Strauss, Miami, Fla., for plaintiff-appellant.

Robert L. Shevin, Atty. Gen., Richard Stanley Rachlin, Asst. Atty. Gen., Tallahassee, Fla., Allan H. Rothstein, City Atty., L. Joseph Hoffman, Asst. City Atty., Robert W. Rust, U. S. Atty., Raymond B. Ray, Asst. U. S. Atty., Miami, Fla., Elliot L. Richardson, Atty. Gen., Washington, D. C., Talbot D'Alemberte, Miami, Fla., Morton Hollander, Anthony J. Steinmeyer, Dept. of Justice, Washington, D. C., for defendants-appellees.

Before BROWN, Chief Judge, and WISDOM and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Rev. Temperance E. Wright brought this action in the United States District Court for the Southern District of Florida against the United States, the State of Florida, and numerous federal, state and local officials. In his complaint, as amended, Rev. Wright sought an injunction, declaratory relief and money damages for violation of his constitutional and statutory rights resulting from dissemination of certain information gained from allegedly illegal wiretaps. The district court, after a hearing on jurisdiction, dismissed the complaint without prejudice, and Rev. Wright has appealed. Finding that there are two causes of action which plaintiff should have been allowed to prove at a hearing on the merits, we must reverse and remand for further proceedings.

In his complaint, Rev. Wright alleged the following facts: Some time between September and December, 1971, Bernard Garmire, chief of the Miami, Florida, police department, began an investigation of possible influence and corruption in the Dade County court system. In connection with that investigation, members of the department began a surveil-

lance of Frank Martin, who is not a party to this action. In the spring of 1972, Garmire asked for and received assistance in his investigation from E. Wilson Purdy, Director of Public Safety for Dade County. In May, 1972, agents from the Department of Public Safety and the Miami Police Department observed Martin in activities which led them to believe that he was exerting influence on cases in the Dade County courts.

In June, 1972, as a result of the investigation, Garmire and Purdy asked Reubin Askew, Governor of Florida, to request authorization for the interception of wire communications, in compliance with state and federal statutes, F.S.A., Section 934.01 et seq., F.S.A., and 18 U.S.C. § 2510 et seq. (Ch. 119). Specifically, the two law enforcement officers wanted to tap a telephone in a service station at 2200 N.W. 12th Ave., Miami, where Martin is alleged to have been conducting his influence-peddling. Governor Askew, on the advice of his legal counsel, Edgar Dunn, refused the request because of inadequate compliance with the relevant statutes. A month or so later, Garmire and Purdy renewed their application, this time successfully. On July 26, 1972, Chief Justice James C. Adkins of the Florida Supreme Court approved a tap on the gas station telephone. The tap lasted until August 26, the maximum time allowed by 18 U.S.C. § 2518(5). On September 1, 1972, Justice Adkins approved a new tap on the same telephone, which lasted until September 14. In November, 1972, Justice Adkins extended for three months the time for formal notification of the existence of the first tap. See, 18 U.S.C. § 2518(8)(d).

About the same time, Garmire and Purdy asked Governor Askew to appoint a special prosecutor to act on the information gained in the taps, which the governor did on February 2, 1973.

Before the governor granted the request, his legal counsel, Dunn, examined some of the information contained in the taps. Some time between December,

1972, and February, 1973, the federal government entered the picture. Douglas McMillan, attorney in charge of the Justice Department's Miami strike force, started investigating Martin, and gained access to the information in the taps. McMillan began presenting information to a federal grand jury in January, 1973. On February 3, 1973, deputies of the Department of Public Safety began serving some of the subjects of the tap, including Martin and Rev. Wright, with inventories of information gained in the taps. On February 5, 1973, Purdy made statements to representatives of the media describing some of the information revealed by the wiretaps, and these statements received considerable publicity, which Rev. Wright alleges has injured his reputation and endangered his job.

Rev. Wright's complaint contains four counts. Many of the allegations and requests for relief in the four counts are repetitious and confusing, but in essence Rev. Wright has asked for the following:

1. A declaratory judgment that F.S. A., §§ 934.02(8) and 934.07 are inconsistent with Title 18 U.S.C., Ch. 119, and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

2. A declaratory judgment that Ch. 119 pre-empts the field of interceptions of wire communications.

3. A declaratory judgment that certain activities of the defendants, including the tap authorized July 26, 1972, violated the same federal statutes and constitutional provisions.

4. An injunction against any criminal prosecution of the plaintiff based on the taps.

5. An order sealing the results of the taps.

6. Compensatory damages of $50,000 and punitive damages of $1,000,000 to redress violations of plaintiff's Fourth and Fourteenth Amendment rights, plus attorneys' fees and costs.

7. Compensatory liquidated damages of $100 per day and punitive damages of $1,000,000 for violation of plaintiff's rights under 18 U.S.C. § 2520,[1] plus attorneys' fees and costs.

After a hearing on jurisdiction, the district court dismissed the case without prejudice on the grounds (1) that the court lacked subject matter jurisdiction because no civil rights violation was alleged, (2) that the complaint failed to state a claim on which relief could be granted, and (3) that the cases of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), and Becker v. Thompson, 459 F.2d 919 (5th Cir. 1972), precluded equitable relief in the circumstances of this case.

In paragraphs 6 and 7 above, Rev. Wright asserts two causes of action for damages based on the illegal wiretapping of conversations to which he was a party. One cause of action (in Count III of the complaint) is based directly on the Fourth Amendment to the Constitution, and the other (in Count IV of the complaint) is based on 18 U.S.C. § 2520. The district court dismissed these two causes of action along with the claims for equitable relief without an extended discussion of the reasons.

■■ Dealing first with the Fourth Amendment claim, Rev. Wright has cited no jurisdictional statute which would allow the court to grant any relief against the federal defendants. Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). With respect to the state defendants, 42 U.S.C. § 1983, cited by the plaintiff, provides a cause of action for violation of the Fourth Amendment,[2] and 28 U.S.C. § 1343(3) provides jurisdiction.[3] Therefore, the Fourth Amendment claim for damages against the state and local officials should not have been dismissed either for lack of jurisdiction or failure to state a claim. See, *Bivens, supra.*

---

1. 18 U.S.C. § 2520 provides:

Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—

(a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

(b) punitive damages; and

(c) a reasonable attorney's fee and other litigation costs reasonably incurred.

A good faith reliance on a court order or on the provisions of section 2518(7) of this chapter shall constitute a complete defense to any civil or criminal action brought under this chapter.

2. 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

██ We now must face the question of whether the plaintiff has cited any jurisdictional statute which would allow the district court to award damages under 18 U.S.C. § 2520. The only possibly applicable jurisdictional statute cited by the plaintiff is 28 U.S.C. § 1343(4), and that statute applies only if § 2520 is held to protect "civil rights." We hold, as has at least one other court, Kinoy v. Mitchell, 331 F.Supp. 379, 382 (S.D.N.Y.1971), that the right to be free from unauthorized or improperly authorized wiretapping, being one aspect of the right to be free from unreasonable searches and seizures, Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967), is a civil right, within the meaning of § 1343(4). Therefore, the district court did have jurisdiction to hear plaintiff's claims under 18 U.S. C. § 2520.

██ Defendants argue strenuously that since the interceptions in question were all authorized by the order signed by Justice Adkins, they have a complete defense to the action. It is true that good faith reliance on a court order would be a defense both to the Fourth Amendment claims, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 456 F.2d 1339 (2nd Cir. 1972), rev'd on other grounds, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and to the claims under § 2520. Nevertheless, the validity of the defense is not determined conclusively by the pleadings, and plaintiff should have the opportunity to prove his case. Abramson v. Mitchell, 459 F.2d 955 (8th Cir. 1972).

██ Having decided that this case must be remanded, we note in passing that since the district court held its hearing in this case, the Supreme Court has reversed this court's decision in Becker v. Thompson, *supra*, relied on in part by the district court in dismissing plaintiff's claims for equitable relief. Steffel v. Thompson, 42 U.S.L.W. 4357,

415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Therefore, the district court will reconsider its treatment of plaintiff's claims for equitable relief in light of this reversal. See also, Wall v. American Optometric Ass'n. et al., —— F.Supp. —— (N.D.Ga.1974) (3-Judge court) [No. CA–16414, April 19, 1974].

Finally, Rev. Wright has not made allegations of fact which would sustain a claim for relief against any federal official. Therefore, the federal officials' motions to dismiss were correctly granted. F.R.Civ.P., Rule 12(b)(6); cf., United States v. Calandra, 42 U.S.L.W. 4104, 414 U.S. 338, 94 S.Ct. 613, 38 L. Ed.2d 561 (1974).

Reversed and remanded.