**REED ENTERPRISES et al., Petitioners,**

**v.**

**The Honorable Howard F. CORCORAN, Judge of the United States District Court for the District of Columbia, Respondent.**

**Milton LUROS et al., Petitioners,**

**v.**

**The Honorable John J. SIRICA, Judge of the United States District Court for the District of Columbia, Respondent.**

Nos. 19677, 19722.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 29, 1965.

Decided Dec. 2, 1965.

**520**

Mr. David Rein, Washington, D. C., for petitioners.

Mr. Frank Q. Nebeker, Asst. U. S. Atty., with whom Messrs. John C. Conliff, Jr., U. S. Atty. at the time of argument, and Jerome Nelson, Asst. U. S. Atty., were on the pleadings, for respondents.

Before FAHY, WRIGHT and LEVENTHAL, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

In these mandamus proceedings,[1] petitioners request issuance of writs requiring that respondents take the necessary steps to have convened three-judge District Courts under 28 U.S.C. § 2284. They assert that in spite of the allegations in the complaints filed in the District Court, of the unconstitutionality of 18 U.S.C. §§ 1461 and 1462 as amended in 1958, Pub.L. 85–796, §§ 1–2, 72 STAT. 962, and irreparable damage which would result from enforcement of these statutes as to them, respondents have refused to comply with the procedures required by 28 U.S.C. § 2284 to have three-judge District Courts consider the applications for injunction against the Attorney General of the United States and his nominees.

In their complaints filed in the District Court, petitioners allege that they are distributors and publishers of books and magazines, and that the representatives of the United States "intend to and will commence and prosecute various criminal actions in the District Courts throughout the United States purportedly authorized under Title 18, United States Code, Sections 1461 and 1462, as amended. Such actions by defendants will necessarily involve plaintiffs in a multiplicity of legal proceedings; involve and threaten them with the destruction of their good-will and property; and exhaust their financial and physical resources and thus make it impossible for plaintiffs to adequately defend against the aforesaid multiple criminal prosecutions. Such conduct will seriously diminish the circulation of plaintiffs' books and writings, and plaintiffs will suffer substantial and irreparable loss and damage for which plaintiffs have no adequate remedy at law."

The particular part of the statutes on which the petitioners rely for the issuance of an injunction against their enforcement "purport[s] to permit the prosecution of alleged violators at either the place of mailing or at the place of delivery or at any other place through which material passes, thus allegedly authorizing arbitrary forum-picking by federal prosecutors and the institution of multiple prosecutions for identical material in districts far removed from the residences and places of business of alleged violators." This statutory permission for forum-picking, according to petitioners, "constitutes an unlawful interference with and abridgement and denial of the freedom of the press, in violation of the First Amendment; deprives persons, including these plaintiffs, of their liberty and property without due process of law, in violation of the Fifth Amendment; and deprives persons of their rights to a fair trial in a criminal prosecution guaranteed by the provisions of the Sixth Amendment."

1. 28 U.S.C. § 1651.

18 U.S.C. §§ 1461 and 1462 prohibit the mailing, importation and transportation of obscene matter. Before the 1958 amendment, § 1461 was upheld against constitutional attack based on First, Fifth, Ninth and Tenth Amendment grounds. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Venue for the prosecution in *Roth* was the place where the material was mailed, the prior case of United States v. Ross, 10 Cir., 205 F.2d 619 (1953), having held, in spite of the "continuing offense" language in 18 U.S.C. § 3237, that venue under these statutes was proper only at the place of mailing.

It was to reverse the *Ross*-imposed limitation on venue under the obscenity statutes that Congress passed the 1958 amendment. In passing this amendment, the Congress rejected a Senate proposal which would have limited the extension of venue under §§ 1461 and 1462 to the place of delivery. The final form of the bill contained the broader language proposed by the House: "Whoever knowingly uses the mails * * *." Thus, as amended, venue under these statutes is proper, not only at the place of mailing and delivery, but in any district through which the allegedly obscene matter travels. See 1958 U.S.CODE CONG. & AD. NEWS, p. 4017. It is the constitutionality of the amendment which is under attack in these proceedings.

The Government seeks dismissal of these applications for writs of mandamus on grounds that a long line of Supreme Court cases has affirmed the constitutionality of "continuing offense" venue provisions in criminal statutes[2]; that the constitutionality of the 1958 amendment to the obscenity statutes can be tested in the criminal proceedings which have already been brought in the districts of delivery of the allegedly obscene matter; and that the allegations of harassment by multiple prosecutions in venues permitted under the 1958 amendment are untrue.

The problem presented as to whether the convening of three-judge Districts Courts is required in these cases divides itself into three parts: (1) the presence or absence of a substantial constitutional question; (2) the necessity for injunctive relief; and (3) the presence or absence of a case or controversy. We shall consider these issues seriatim.

## I

Since *Roth* has settled the constitutionality of the obscenity statutes prior to the 1958 amendment, we need only consider the effect of that amendment. Petitioners allege, with substantial support from the Supreme Court, that prosecutions involving possible collision with First Amendment rights are not subject to the routine consideration given prosecutions under ordinary criminal statutes.[3] "[T]he line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn. * * * The separation of legitimate from illegitimate speech calls for more sensitive tools * * *." Speiser v. Randall, 357 U.S. 513, 525, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958). Moreover,

---

2. Citing Armour Packing Co. v. United States, 209 U.S. 56, 73–77, 28 S.Ct. 428, 52 L.Ed. 681 (1908) (transportation of goods at illegal freight rates); United States v. Johnson, 323 U.S. 273, 274–276, 65 S.Ct. 249, 89 L.Ed. 236 (1944) (using mails for wrongful sending of dentures); United States v. Cores, 356 U.S. 405, 408, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958) (alien crewman remaining in United States beyond time permitted by conditional landing permit).

3. In Smith v. People of State of California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), the Supreme Court reversed a conviction of a bookseller under a Los Angeles ordinance which did not contain the element of *scienter*. In so doing, the Court stated:

"* * * Our decisions furnish examples of legal devices and doctrines, in most applications consistent with the Constitution, which cannot be applied is settings where they have the collateral effect of inhibiting the freedom of expression, by making the individual the more reluctant to exercise it. * * *" *Id.* at 150–151, 80 S.Ct. at 217.

it is not clear that the standard to be applied to material challenged as obscene is a national one or one that may vary from district to district.[4] In this context, the question as to whether the prosecution may constitutionally be allowed a multiple choice of forum acquires added importance.

■ There can be no doubt that the purpose of the 1958 amendment was to provide the prosecution a multiple venue choice to facilitate successful prosecution. The General Counsel of the Post Office Department, which sponsored the amendment, advised the Congress that the need for reversing the *Ross* decision which limited venue under §§ 1461 and 1462 to the district of mailing arose from "the fact that it is sometimes difficult to obtain a conviction for the mailing of obscene matter in certain jurisdictions. In the Ross case, above, the defendant had mailed pictures of nude females in one State for delivery in another State. In the judicial district where the pictures were mailed, the court held that the pictures were not obscene * * *." Letter to Chairman of House Judiciary Committee, 1958 U.S.CODE CONG. & AD. NEWS, pp. 4014–4015.

■■ While obscenity is without constitutional protection, "[a]ll ideas having even the slightest redeeming social importance" come within the First Amendment guaranty. Roth v. United States, *supra*, 354 U.S. at 484, 77 S.Ct. at 1309. The question in each case as to whether a particular publication is obscene is a mixed one of law and fact. The Supreme Court in *Roth* held that it was a question which should be submitted to the jury to be determined under proper instructions. 354 U.S. at 489–490, 77 S.Ct. 1304. Under the circumstances, again the importance of venue is obvious. Where the prosecution is brought may very well determine whether the books and magazines are obscene or constitutionally protected.

While we do not, of course, intimate any opinion as to the constitutionality of the 1958 amendment, an attack on a statute which would permit the prosecution a multiple choice of venue in this protected area of First Amendment freedoms is not patently frivolous. Such choice could induce the publisher to engage in self-censorship and thus restrict the public's access to protected publications. "Even the prospect of ultimate failure of such prosecutions by no means dispels their chilling effect on protected expression." Dombrowski v. Pfister, 380 U.S. 479, 494, 85 S.Ct. 1116, 1125, 14 L.Ed.2d 22 (1965).

■ We find that the complaints filed in the District Court raise a substantial question as to the constitutionality of the 1958 amendment.

## II

■ The traditional basis for injunctive relief is, of course, irreparable harm and inadequacy of legal remedies. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506–507, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). Ordinarily, in injunction proceedings seeking to restrain enforcement of an allegedly unconstitutional statute, once a substantial question of constitutionality is raised and the complaint "at least formally alleges a basis for equitable relief," a three-judge court is required. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962). Here the allegations in the complaints unquestionably outline a basis for equitable relief. For the purpose of determining whether three-judge courts are required, these allegations, unless obviously colorable, must be taken as true, and the answers of the Government addressed to three-judge courts. *Ibid.* See also Schneider v. Rusk, 372 U.S. 224, 83 S.Ct. 621, 9 L.Ed.2d 695 (1963). Compare Pierre v. Jordan, 9 Cir., 333 F.2d 951, 956–957 (1964), cert. denied, 379 U.S. 974, 85 S.Ct. 664, 13 L.Ed.2d 565 (1965).[5]

---

4. See the various opinions in Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964).

5. See Note, The Three-Judge District Court: Scope and Procedure Under Section 2281, 77 HARV.L.REV. 299, 309 (1963).

Petitioners allege that the multiplicity of legal proceedings which the Government intends to bring will destroy their businesses, exhaust their financial resources, and make it impossible to defend themselves. In argument and brief they point to the fact that they are already under indictment far from their homes and businesses, and cite other cases where a single publisher has been charged under the same statutes in several different places.[6] If these allegations can be supported by evidence, irreparable damage appears patent.

The Government's suggestion that petitioners have an adequate remedy at law in the criminal proceedings now pending against them, while perhaps appropriate in cases outside the First Amendment area where a single prosecution is contemplated, is unavailing here. The Government has not even denied that it contemplates multiple prosecutions. In affidavits supporting its answer filed in the District Court in opposition to the applications for preliminary injunction, it is merely stated: "The Department of Justice has not taken any action with respect to plaintiffs which is intended to harass the plaintiffs or to abridge any freedoms to which they are entitled." Moreover, under some circumstances even a single "criminal prosecution under a statute regulating expression usually involves imponderables and contingencies that themselves may inhibit the full exercise of First Amendment freedoms. \* \* \* The assumption that defense of a criminal prosecution will generally assure ample vindication of constitutional rights is unfounded in such cases." Dombrowski v. Pfister, *supra*, 380 U.S. at 486, 85 S.Ct.

at 1120. Compare Terrace v. Thompson, 263 U.S. 197, 216, 44 S.Ct. 15, 68 L.Ed. 255 (1923).

### III

The Government's argument that the applications for three-judge courts were properly denied because the litigation in the District Court did not present a case or controversy within the meaning of Article 3 of the Constitution is predicated primarily on our opinion in Lion Manufacturing Corporation v. Kennedy, 117 U.S.App.D.C. 367, 330 F.2d 833 (1964). There, in an action to enjoin enforcement of the Slot Machine Act of 1951 as amended by the Gambling Devices Act of 1962, 15 U.S.C. §§ 1171–1178, we held that an application for a three-judge court was properly denied, the District Court being without jurisdiction since the complaint stated no case or controversy. In *Lion*, "[i]t is nowhere alleged that the Attorney General, or anyone acting for him, has taken steps to initiate criminal prosecutions against plaintiffs or to require registration, nor that threats to this effect have been directed to plaintiffs." 117 U.S.App.D.C. at 372, 330 F.2d at 838. The factual difference between Lion and these cases is manifest.[7] Moreover, Lion is not concerned with the protected area of First Amendment freedoms. Where the plaintiff complains of chills and threats in the protected First Amendment area, a court is more disposed to find that he is presenting a real and not an abstract controversy.

We conclude that there is indeed presented a case or controversy within the intendment of Article 3 in each of these cases, and that under 28 U.S.C. § 2284

---

**6.** Petitioners' brief, at page 7, reads:

"\* \* \* Thus, a Fresno publisher, who was vindicated in a proceeding on an indictment in Fresno, the place of mailing (U.S. v. Aday Fresno, No. 34–45 N.D. Crim.1958), was, after the amendment to 38 [*sic*] U.S.C. § 1461, indicted in Arizona (U.S. v. Aday, No. C–15596, Phoenix), Grand Rapids, Michigan (U.S. v. Aday, Cr. No. 6615, Western District of Michigan, Southern Division), Honolulu (U.S. v. Aday, Cr. No.

11510, District of Hawaii), and Houston, Texas (U.S. v. Aday, Southern District of Texas, Houston Division, Criminal No. 65–H. 80). \* \* \*"

**7.** For a case clearly pointing up the difference between a justiciable controversy and a request for an advisory opinion, see United Public Workers of America (CIO) v. Mitchell, 330 U.S. 75, 86–94, 67 S.Ct. 556, 91 L.Ed. 954 (1947).

three-judge District Courts are required to hear them.

## IV

We come at last to the propriety of review by this court of the district judges' refusal to convene three-judge courts. The fact that a Court of Appeals has no jurisdiction to hear an appeal on the merits in a three-judge case, 28 U.S.C. § 1253, was for a time thought to be inconsistent with any review by that court of a district judge's failure to convene a three-judge court. In Idlewild Bon Voyage Liquor Corp. v. Epstein, *supra*, however, the Supreme Court put an end to that misconception, and denied that "a court of appeals is powerless ever to give any guidance when a single judge has erroneously invaded the province of a three-judge court. The Court of Appeals clearly stated its opinion that a court of three judges ought to have been convened to consider this litigation. That view was correct and should have been followed upon the petitioner's renewed motion that such a statutory court be impaneled." 370 U.S. at 716, 82 S.Ct. at 1296.

Three-judge District Courts should have been convened to hear these cases. No final action will now be taken, however, on the petitions for writs of mandamus, as we assume that the respondents will take appropriate action in requesting three-judge courts pursuant to § 2284(1). See Svejkovsky v. Tamm, 117 U.S.App.D.C. 114, 326 F.2d 657 (1963).

An appropriate order will issue in each case.

FAHY, Circuit Judge, concurs in the result and in Part IV of this opinion.