Robert Alan JONES, Individually, Etc., Plaintiff-Appellant,

v.

Henry WADE, Individually, Etc., and Frank Dyson, Individually, Etc., Defendants-Appellees.

No. 72–1481.

United States Court of Appeals, Fifth Circuit.

May 30, 1973.

Rehearing En Banc Granted Aug. 6, 1973.

Simpson, Circuit Judge, dissented with opinion.

Bill Barbisch, Austin, Tex., for plaintiff-appellant.

N. Alex Bickley, Joseph G. Werner, Dallas, Tex., for Dyson.

Edgar A. Mason, Asst. Dist. Atty., Dallas, Tex., for Wade.

John L. Hill, Atty. Gen. of Texas, Jay Floyd, Gilbert J. Pena, Asst. Attys. Gen., Austin, Tex., for State of Texas.

Before TUTTLE, WISDOM and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

The question before us is whether a three-judge court should have been convened to decide this case, involving al-

leged desecration of the American flag in violation of Texas law. This is a jurisdictional matter for the Court of Appeals to decide. We hold that a three-judge court, not a single judge, had jurisdiction to decide the case.

Robert Jones, defendant-appellant, was arrested for violation of the Texas flag desecration statute. Vernon's Ann. Tex.Pen.Code Art. 152. He sued in the federal district court seeking a declaratory judgment that the statute was unconstitutional on its face and requesting an injunction to prevent the state from prosecuting him under the statute. Jones requested that the district court convene a three-judge court to hear the case. The district court dismissed his suit without an evidentiary hearing and without findings. This Court remanded for an evidentiary hearing. Jones v. Wade, 5 Cir. 1971, 436 F.2d 1382. After a hearing, the district court issued a written opinion again dismissing the suit. Jones v. Wade, 1972, N.D.Tex., 338 F.Supp. 441. Jones brought this appeal. We hold that Jones's complaint presented a substantial federal question both as to the constitutionality of the statute and the propriety of federal intervention, and that the district court therefore erred in refusing to convene a three-judge court. We reverse and remand with directions to convene a three-judge court. This holding should not be construed as a decision on the merits.

On the afternoon of May 18, 1970, Jones went to the Dallas Police Department to file a complaint against a Dallas police dispatcher. He was wearing an army surplus green fatigue shirt with a small American flag sewn over the right breast pocket, and a pair of army surplus green fatigue pants with slits in the cuffs into which he had sewn small American flags. While Jones was in the process of filing his complaint, he was arrested for investigation of a possible violation of Article 152 and jailed. His attorney filed an application for habeas corpus in state court, which was scheduled for a hearing the morning of the following day, May 19. Later that afternoon Jones was released without charges. Unaware that his client had been released, Jones's attorney brought this action in federal court on the morning of May 19, before the hearing on the application for state habeas.

Subsequent to the filing of this suit, on the afternoon of May 19, Jones went to the office of the Dallas County District Attorney wearing the same attire. There he was again arrested. The parties have stipulated that the persons who arrested Jones on May 19 were not acting in concert with the officers who arrested him on May 18. Jones has been indicted for this second violation, but the state has withheld prosecution pending the outcome of the present case.

In its opinion dismissing the case the district court stated that Jones had been arrested not for expression within the protection of the First Amendment, but for unprotected conduct. Further, the district court held that federal injunctive or declaratory relief was inappropriate under Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, and its companion cases absent a showing of bad faith. Finally, the district court held that the Texas flag desecration statute was a constitutional exercise of the state's police power.

Our jurisdiction on this appeal is limited to considering whether the district court erred in refusing to convene a three-judge court on the ground that Jones failed to present a substantial federal question. Schackman v. Arnebergh, 1967, 387 U.S. 427, 87 S.Ct. 1622, 18 L. Ed.2d 865; Idlewild Bon Voyage Liquor Corp. v. Epstein, 1962, 370 U.S. 713, 716, 82 S.Ct. 1294, 8 L.Ed.2d 794; Stratton v. St. Louis Southwestern Ry., 1930, 282 U.S. 10, 51 S.Ct. 8, 75 L.Ed. 135. Our inquiry is three-fold: (1) Does Jones present a justiciable controversy and have standing to bring this suit? (2) Is there a substantial question as to the constitutionality of the statute? (3) Would a three-judge court be precluded from exercising its discretion to grant injunctive or declara-

tory relief? See Ex Parte Poresky, 1933, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152; Maryland Citizens for a Representative General Assembly v. Governor of Maryland, 4 Cir. 1970, 429 F.2d 606, 611; Reed Enterprises v. Corcoran, 1965, 122 U.S.App.D.C. 387, 354 F.2d 519, 521; Frontiero v. Laird, 1971, M. D.Ala., 327 F.Supp. 580 (three-judge court). We consider these questions in order.

## I.

■ Jones has presented a justiciable controversy and has standing to maintain this action. Jones had been arrested once at the time he brought this suit. He was facing the possibility of future arrests under a statute which at least arguably made his actions illegal. We conclude that Jones has asserted "a sufficiently direct threat of personal detriment." Doe v. Bolton, 1973, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201, 210. His standing to challenge this statute on its face is not affected by whether his apparel is characterized as protected symbolic speech (see Tinker v. Des Moines Indep. School District, 1969, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731) or as mere "conduct." Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844, 847 (1970).

## II.

As originally enacted, Article 152 reads:

Any person who shall within this State, publicly or privately, mutilate, deface, defile, defy, tramp upon, or cast contempt upon, either by word or act any flag, standard, color, or ensign of the United States, or that of any of its officers, or on any imitation of either of them, shall be confined in the penitentiary not less than two nor more than twenty-five years.

The Texas state courts have substantially narrowed the scope of this statute to remove constitutional defects. In Deeds v. State, Tex.Cr.App.1971, 474 S.W.2d 718, the Texas Court of Criminal Appeals removed the statute's prohibition of speech. More recently the Court of Criminal Appeals has excised the statutory prohibition of private acts. Delorme v. State, Tex.Cr.App.1973, 488 S. W.2d 808. See also Van Slyke v. State, Tex.Cr.App.1973, 489 S.W.2d 590; Case v. State, Tex.Cr.App.1973, 489 S.W.2d 593; Holland v. State, Tex.Cr.App.1973, 489 S.W.2d 594.

■ Even given these limiting constructions, we cannot agree with the district court that the statute is clearly constitutional. The state undoubtedly has a legitimate interest in preventing breaches of the peace which might follow certain acts of flag desecration.[1] Street v. New York, 1969, 394 U.S. 576, 590–593, 89 S.Ct. 1354, 22 L.Ed.2d 572. But Article 152 is not focused narrowly on the furtherance of this interest. Instead, the statute broadly proscribes all acts which "cast contempt" upon the flag.[2] Nowhere does the statute offer any guidance to potential defendants or

1. The appellees also contend that the state has an interest in requiring proper respect for the dignity of the flag. To a large extent this is properly a federal rather than a state interest, and should be adequately served by the federal flag desecration statute. 18 U.S.C. § 700. To the extent that the state has a legitimate interest in such regulation, it is subject to strict limitations. See Street v. New York, 1969, 394 U.S. 576, 593, 89 S.Ct. 1354, 22 L.Ed.2d 572; West Virginia Board of Education v. Barnette, 1943, 319 U.S. 624, 63 S.Ct. 1178, 87 L. Ed. 1628. Nor, for the reasons expressed in this opinion, does the statute appear to be confined to the protection of this interest.

2. The appellees argue that Article 152 is similar to the federal flag desecration statute, 18 U.S.C. § 700, which has been upheld as constitutional. Joyce v. United States, 147 U.S.App.D.C. 128, 1971, 454 F.2d 971, cert. denied, 1972, 405 U.S. 969, 92 S.Ct. 1188, 31 L.Ed.2d 242. The federal statute reads in part:

(a) Whoever knowingly casts contempt upon any flag of the United States by publicly mutilating, defacing, defiling, burning, or trampling upon it shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

This statute is considerably narrower than Article 152. Unlike Article 152, it pro-

arresting officers as to the meaning of the words "cast contempt." Conceivably included within the sweep of this language is a wide variety of activity: "black power" salutes by militant athletes, a refusal to remove one's hat during the playing of the Star Spangled Banner,[3] the flying of tattered flags, the display of mud-spattered bumper stickers, or the wearing of small flags sewn on the shirts of police officers. See Crosson v. Silver, 1970, D.Ariz., 319 F. Supp. 1084 (three-judge court); Hodsdon v. Buckson, 1970, D.Del., 310 F. Supp. 528 (three-judge court).

The circumstances of Jones's arrests demonstrate the difficulty of giving content to this statutory language. His attire at least arguably fell within the statute's prohibition. Yet though it is not disputed that he wore this apparel in full view of law enforcement officers on several occasions, he was arrested only twice. And those arrests took place while Jones was trying to file a complaint against a Dallas police officer. There is no indication that his actions ever provoked violence or public disorder.

The statute contains other broad language. Article 152 punishes conduct directed not only against a "flag," but also against any "standard, color, or ensign of the United States, or that of any of its officers, or . . . any imitation of either of them." The statute does not define what constitutes an "imitation." And it is questionable whether mutilation of any and all such symbols, or imitations thereof, would be so likely to provoke public disorder or outrage as to furnish legitimate grounds for state regulation. See Crosson v. Silver, *supra*, 319 F.Supp. at 1089 & n.6.

### III.

In a case otherwise within the jurisdiction of a three-judge court, the question whether the *Younger* doctrine requires abstention is generally a matter for the exercise of equitable discretion, and thus ordinarily a determination to be made by a three-judge court rather than by a single district judge. Abele v. Markle, 2 Cir. 1971, 452 F.2d 1121, 1125; see Note, The Three-Judge District court: Scope and Procedure Under Section 2281, 77 Harv.L.Rev. 299, 309 (1973). A single district judge may dismiss only where it is plain that *Younger* leaves no room for a three-judge court to exercise equitable discretion. In the present case the district court found that *Younger* was controlling, and that Jones had failed to demonstrate a pattern of bad faith harassment as required by *Younger*.

Even assuming that the district court was correct in finding that Jones's allegation of bad faith harassment was patently frivolous on its face, we cannot agree with the conclusion that the *Younger* doctrine so clearly prevents the issuance of declaratory or injunctive relief in these circumstances as to deprive a three-judge court of jurisdiction.[4] In *Younger* the Court held that a federal court could not issue an injunction against a *pending* state criminal proceeding absent a showing of "great and immediate" injury. The *Younger* Court stated that the mere allegation that a statute was overbroad was insufficient to show "great and immediate" injury; there must in addition be a showing of a scheme of bad faith official enforcement or the like, rendering reliance on state procedures inadequate to vindicate constitutional rights. Samuels v. Mackell,

---

hibits only "knowingly" casting contempt on the flag. And the federal statute explicitly defines "casting contempt" as "mutilating, defacing, defiling, burning, or trampling upon." Article 152 gives "casting contempt" an entirely undefined meaning different from those acts.

3. Compare West Virginia Board of Educ. v. Barnette, 1943, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628.

4. In this case a three-judge court properly has jurisdiction over the claim for declaratory as well as injunctive relief. See Perez v. Ledesma, 1971, 401 U.S. 82, 90, 91 S.Ct. 674, 27 L.Ed.2d 701 (Stewart, J., concurring); Florida Lime & Avocado Growers, Inc. v. Jacobsen, 1960, 362 U.S. 73, 80–81, 80 S.Ct. 568, 4 L.Ed. 2d 568; Sterling v. Constantin, 1932, 287 U.S. 378, 393–394, 53 S.Ct. 190, 77 L. Ed. 375.

1971, 401 U.S. 66, 91 S.Ct. 764, 27 L. Ed.2d 688, a companion case, applied like requirements to requests for declaratory relief.

The Court in *Younger* expressly did not purport to settle the question of what standard must be met to obtain federal injunctive or declaratory relief when, as here, state criminal proceedings under an allegedly overbroad statute have not yet been instituted.[5] The considerations of federalism which *Younger* stressed are cast in a much different light when state proceedings are merely threatened and not actually pending. A federal injunction at the pre-prosecution stage causes only a minimal disruption of the state's enforcement of its criminal laws, since state prosecutorial machinery has not yet been set in motion.[6] Moreover, though the state has an interest in having its statutes reviewed initially in its own courts, in the pre-prosecution context there is no guarantee that the state courts will ever get that opportunity. State prosecuting authorities may, as here, simply decide to drop the case rather than press for a conviction. Correspondingly, there is a danger of undue prolongation of the chilling effect of an overbroad statute. When a state prosecution is already pending, federal courts may assume that federal rights will be promptly vindicated by the state judiciary. When a state prosecution has not yet been instituted, there is a danger of lengthy delay prior to indictment. Or the state may simply decide not to prosecute, whether or not in good faith, possibly leaving the defendant without a state remedy[7] and deterred from engaging in protected activity by the threat of future arrest. A number of federal courts have accordingly found the *Younger* doctrine inapplicable to suits for federal relief against threatened state proceedings.[8] The Supreme Court has again recently suggested the viability of the pending/threatened distinction. Compare Roe v. Wade, 1973, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, 162, with Doe v. Bolton, 1973, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201, 210.

5. Younger v. Harris, 1971, 401 U.S. 37, 41, 91 S.Ct. 746, 27 L.Ed.2d 669. See Perez v. Ledesma, 1971, 401 U.S. 82, 120–122, 91 S.Ct. 674, 27 L.Ed.2d 701 (Brennan, J., concurring in part and dissenting in part); Younger v. Harris, *supra*, 401 U.S. at 55, 91 S.Ct. 746 (Stewart, J., concurring); LeFlore v. Robinson, 5 Cir. 1971, 446 F.2d 715, 719 (Goldberg, J., specially concurring).

In Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22, the Court held that injunctive relief could be issued by a federal court against a threatened state criminal prosecution under an overbroad statute on a showing of bad faith harassment. But the Court did not state that a showing of bad faith was an essential prerequisite to federal relief. See The Supreme Court, 1970 Term, 85 Harv.L.Rev. 3, 302 (1971).

The federal anti-injunction statute, 28 U.S.C. § 2283, does not bar this action, even if it could be said that there was a state "proceeding" against Jones after he was released without charge. Mitchum v. Foster, 1972, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705.

6. Wulp v. Corcoran, 1 Cir. 1972, 454 F.2d 826, 831; The Supreme Court, 1970 Term, *supra*, 85 Harv.L.Rev. at 308; Note, Implications of the *Younger* Cases for the Availability of Federal Equitable Relief When No State Prosecution Is Pending, 72 Colum.L.Rev. 874, 895 (1972).

That the state brought charges against Jones based on his second arrest, after the filing of his federal action, is of no moment. The only relevant inquiry is whether state prosecution was pending at the time Jones brought suit in federal court. Younger v. Harris, *supra*, 401 U.S. at 41, 91 S.Ct. 746; *id.* at 55, 91 S.Ct. 746 (Stewart, J., concurring); Lewis v. Kugler, 3 Cir. 1971, 446 F.2d 1343, 1347. No charges were pending against Jones at the time he brought this action.

7. The Supreme Court, 1970 Term, *supra*, 85 Harv.L.Rev. at 307.

8. See, e. g., Wulp v. Corcoran, 1 Cir. 1972, 454 F.2d 826; Lewis v. Kugler, 3 Cir. 1971, 446 F.2d 1343, 1347; Hull v. Petrillo, 2 Cir. 1971, 439 F.2d 1184, 1186 n. 1; Thoms v. Smith, 1971, D.Conn., 334 F.Supp. 1203 (three-judge court); Anderson v. Vaughn, 1971, D.Conn., 327 F.Supp. 101 (three-judge court); cases cited in Note, Implications of the *Younger* Cases for the Availability of Federal Equitable Relief When No State Prosecution Is Pending, 72 Colum.L.Rev. 874, 895 n. 135 (1972).

This Court has not expressly adopted a contrary position. The only full opinion of this Court discussing the showing necessary to obtain federal injunctive or declaratory relief against threatened state prosecutions is Becker v. Thompson, 5 Cir. 1972, 459 F.2d 919, rehearing en banc denied, 1972, 463 F.2d 1338, cert. granted sub nom. Steffel v. Thompson, 410 U.S. 593, 93 S.Ct. 1424, 35 L.Ed. 2d 686 (U.S.1973).[9] In *Becker*, however the plaintiffs attacked a state statute not on its face but only as applied to them.[10]

■ When as in *Becker* the state is clearly seeking to enforce its criminal statute in good faith and without discrimination, the. case for federal anticipatory relief is normally less strong when a statute is challenged as applied than when it is attacked as unconstitutional on its face.[11] Assuming it is enforced in good faith, a facially valid statute, unlike an overbroad statute, poses no danger of a broad societal chilling effect on federal rights. See Hufstedler, Comity and the Constitution: The Changing Role of the Federal Judiciary, 46 N.Y.U.L.Rev. 841, 868 n. 85 (1972). Moreover, the state's legitimate interest in good faith interpretation and enforcement of its facially valid laws is of much greater weight than any state interest in pressing prosecution under facially unconstitutional statutes. And a court engaging in overbreadth scrutiny is operating in a domain of more purely federal concern, focusing not on the actor's conduct but on the possible impact of legislation against a broad background of federal rights.[12]

Since Jones challenges Article 152 as unconstitutional on its face, his claim presents a more pressing question than that raised by the plaintiffs in *Becker*. We consider that *Becker* does not foreclose a three-judge court from granting appropriate relief.[13]

The judgment of the district court is reversed and the case is remanded with directions to convene a three-judge court.

SIMPSON, Circuit Judge (dissenting):

I respectfully dissent from the decision of the majority reversing and remanding "with directions to convene a three-judge court." I regard this case as clearly governed by the decision of this Court in Becker v. Thompson.[1]

Despite the attempt to draw fine distinctions[2] between constitutional as-

---

9. Several per curiam opinions have apparently regarded the question as having been conclusively settled by *Younger* or *Becker*, without more. Thevis v. Seibels, 5 Cir. 1972, 464 F.2d 613; Cooley v. Endictor, 5 Cir. 1972, 458 F.2d 513; Thevis v. Moore, 5 Cir. 1971, 440 F.2d 1350. We cannot agree that *Younger* is controlling, especially in view of the Supreme Court's careful avoidance of this question in *Younger*. See note 5 *supra*. Nor, for the reasons stated in this opinion, can we regard *Becker* as dispositive.

Hobbs v. Thompson, 5 Cir. 1971, 448 F.2d 456, though involving an injunction sought against a state civil proceeding, suggested that the determination of whether federal anticipatory relief should be granted should turn on whether federal intervention would affect an on-going state proceeding, whether civil or criminal. See Palaio v. McAuliffe, 5 Cir. 1972, 466 F.2d 1230, 1233.

10. Becker v. Thompson, 459 F.2d at 923–924 (Tuttle, J., concurring in result).

11. There is, however, a strong case for federal injunctive or declaratory relief against state criminal prosecution under a facially valid statute if the state is acting in bad faith or in a discriminatory manner. See Shaw v. Garrison, 5 Cir. 1972, 467 F.2d 113.

12. *Id.* 459 F.2d at 926 (Tuttle, J., concurring in result).

13. [G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision.

Cohens v. Virginia, 1821, 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257, 290 (Marshall, C. J.).

See Becker v. Thompson, 463 F.2d at 1340 (Brown, C. J., dissenting from denial of rehearing en banc).

1. Becker v. Thompson, 5 Cir. 1972, 459 F.2d 919, pet. for rehearing and rehearing en banc denied, 5 Cir. 1972, 463 F.2d 1338, certiorari granted sub nomine, Steffel v. Thompson, 1973, 410 U.S. 593, 93 S.Ct. 1424, 35 L.Ed.2d 686. See further, Cooley v. Endictor, 5 Cir. 1972, 458 F.2d 513; Thevis v. Moore, 5 Cir. 1971, 440 F.2d 1350.

2. See the majority opinion pages 11–13, printed copy.

saults on a state criminal statute as applied (Becker v. Thompson) on the one hand, and facially (this case) on the other, the clear pronouncements of Becker v. Thompson should bind this panel:

"Stated another way, is the propriety of granting a declaratory judgment concerning threatened future criminal prosecution determined by the same test as the propriety of granting injunctive relief, i. e., bad faith harassment? Younger v. Harris, supra. May we transpose to this case, where no state prosecution was pending, what was said about declaratory relief in Samuels v. Mackell, supra, where a state prosecution was pending:

[T]he same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment, and  *  *  * where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well. Id. 401 U.S. at 73, 91 S.Ct. at 768." Op. cit. 459 F. 2d at p. 921–922.

And:

"If the practical effects of injunctive and declaratory judgment remedies are identical because they result in the disruption of a state's enforcement of its criminal statutes when a criminal prosecution is pending, and therefore bad faith harassment must be shown before either remedy may issue, and if, as we have seen, the same test of bad faith harassment is prerequisite to injunctive relief in a threatened criminal prosecution, it follows that a like showing must be made for declaratory relief in a threatened prosecution." Op. cit. at p. 922.

And further:

"It is, of course, self-evident that where state prosecutions were pending *Younger* and *Samuels* established a limitation on the use of the Declaratory Judgment Act, 28 U.S.C.A. § 2201, to those cases where bad faith harassment was shown. The same limitation on the use of the Act necessarily applies in preprosecution cases." Op. cit. p. 923.

And finally:

"If 'the propriety of declaratory and injunction relief should be judged by essentially the same standards', then in preprosecution cases there must be a showing of bad faith harassment for the granting of declaratory as well as injunctive relief. Cooley v. Endictor, 5 Cir. 1972, 458 F.2d 513.

We conclude that under the circumstances of this case, even though no state prosecution was pending against Steffel, since there was no showing of bad faith harassment, he was not entitled to a declaratory judgment." Op. cit. p. 923.

The importance of Becker v. Thompson as a precedent in this Circuit is emphasized by the two opinions at pages 1338 to 1340 of 463 F.2d, first, that of Judges Gewin and Dyer specially concurring in the denial by the full Court of the petition for rehearing en banc, and second, that of Chief Judge Brown for himself and Judges Wisdom and Goldberg, dissenting from the denial of rehearing en banc.

It sharpens the basis of my dissent at this point to quote from the memorandum decision appealed from, which embodied findings of fact and conclusions of law:

"It is clear that plaintiff must assert traditional equitable grounds entitling him to the injunctive relief he requests. Younger v. Harris, 401 U.S. 37, 46, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Perez v. Ledesma, 401 U.S. 82, 122, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); see also Douglas v. City of Jeanette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), and Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The facts of this case present no such equitable grounds for relief.

*  *  *  *  *  *

"In addition, this Court finds that under the circumstances surrounding the institution of this suit, the doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), would be thwarted if plaintiff were granted relief from the state prosecution through federal interference. The *Younger* case repeats the admonition of Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926), that a suit to enjoin state prosecutions 'even with respect to state criminal proceedings *not yet for-*

*mally instituted,* could be proper only under *very special circumstances.'* (emphasis added) Younger v. Harris, *supra,* 401 U.S. at 45, 91 S.Ct. at 751.

"The *Younger* doctrine of non-interference with pending state prosecutions is one of reasonableness and results from the necessity that our federal and state systems coexist and function to achieve the just and speedy disposition of criminal prosecutions. The rationale of the *Younger* doctrine would be defeated if races to the courthouse were allowed to circumvent the application of the rule.

"The facts of this case show that the plaintiff was arrested for suspicion of a violation of Article 152 and was released, and that the next day plaintiff was arrested again for the same conduct and later was indicted by a grand jury. The second arrest took place in the office of the district attorney, who is charged with enforcement of state penal statutes, where plaintiff had gone knowing that arrest was probable and with the intent of doing what he knew to be considered a violation of Article 152. The State officials had no alternative to the prosecution of plaintiff other than a complete abdication of their responsibilities to enforce the laws of the State of Texas. *In this case, the good faith of the State prosecutors cannot be challenged."* (Emphasis supplied)

Absent a showing of bad faith harassment or irreparable injury there is simply no equitable ground for declaratory relief. Bad faith harassment was neither alleged nor proved below. Charges stemming from the first arrest were dismissed and it was only when Jones presented himself in the office of the state district attorney—a place where his attorney had warned him that arrest was likely—that the second arrest occurred.

Affirmance of the district court's dismissal of the action seems to me to be mandated by the Younger v. Harris double trilogy[3] as construed and applied by us in Becker v. Thompson.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

### BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc.

It is ordered that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.

3. In addition to Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, and Samuels v. Mackell, 1971, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688, discussed at length by the majority opinion in Becker v. Thompson, see specifically further Boyle v. Landry, 1971, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696, reversing a three-judge district court's injunction against both pending and anticipated prosecutions in the Illinois state courts under Illinois statutes alleged to be unconstitutional. I quote from the portion of the court's opinion dealing specifically with the Illinois intimidation statute held unconstitutional, under which no charges had been brought:

"There is nothing contained in the allegations of the complaint from which one could infer that any one or more of the citizens who brought this suit is in any jeopardy of suffering irreparable injury if the State is left free to prosecute under the intimidation statute in the normal manner. As our holdings today in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, and Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688, show, the normal course of state criminal prosecutions cannot be disrupted or blocked on the basis of charges which in the last analysis amount to nothing more than speculation about the future. The policy of a century and a half against interference by the federal courts with state law enforcement is not to be set aside on such flimsy allegations as those relied upon here.

"For the reasons set out above and for those set out at greater length today in *Younger* and *Samuels,* we reverse."