SMYL, INC., et al., Plaintiffs,

v.

Richard GERSTEIN, in his offiical capacity as State Attorney for the 11th Judicial Circuit in and for Dade County, Florida, et al., Defendants, Jointly and Severally,

also serve in their Statutory Capacity only under Title 28, U.S.C.A., Section 2284(2) and not as Defendants,

His Excellency, Reubin Askew, Governor of the State of Florida, State Capitol Building, Tallahassee, Florida; and The Honorable Robert Shevin, Attorney General of the State of Florida, State Capitol Building, Tallahassee, Florida.

No. 73-1112-Civ-JLK.

United States District Court,
S. D. Florida,
Miami Division,
Sept. 14, 1973.

Paul F. Gerson, Miami Beach, Fla., for plaintiff.

Fowler, White, Humkey, Burnett, Hurley & Banick, Miami, Fla., for defendants.

JAMES LAWRENCE KING, District Judge.

The plaintiffs, "adult" bookstore owners and employees, have instituted the present action under 42 U.S.C. § 1983 against certain state judges, prosecutors, and law enforcement officials. The bookstore owners and employees challenge the validity of the newly enacted Florida obscenity law, Fla.Stat.Ann. Ch. 73–120 [1] (Supp. No. 4, 1973), and the Dade County obscenity ordinances, Dade County Metro.Ord. No. 73.31.[2] They have sought a declaratory judgment that both the state and county laws are unconstitutional, an injunction against the enforcement of these laws and an injunction against pending prosecutions in state court commended under the authority of the state law. The plaintiffs have requested the convocation of a three-judge court to consider the constitutional questions and they have asked for a temporary restraining order against the enforcement of the state and county laws and against the continued

---

1. The plaintiffs' attack is directed at the definition of obscenity contained in Section 1(2) of the state law:

    Material is obscene if considered as a whole, applying community standards, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex, or excretion, and utterly without redeeming social value and if, in addition, it goes substantially beyond customary limits of candor in describing or representing such matters.

2. The challenge to the ordinance also focuses on its definition of obscenity:

    Any material or performance is "obscene" if (1) considered as a whole, applying community standards, its predominant appeal is to the prurient interests of the average adult, and (2) it is patently offensive because it goes substantially beyond the customary limits of candor in its description of sex, nudity, or excretion, and (3) it is utterly without redeeming social value.

prosecution of the state criminal cases until the requested three-judge court renders its decision.[3] Finally, the bookstore owners and employees claim they are entitled to damages for the alleged deprivations of their constitutional rights under color of state law.

The initial issue and principal question presented is whether the plaintiffs have established the imminency of irreparable harm necessitating the issuance of a declaratory judgment and injunctive relief. The short answer to the question is the plaintiffs have failed to adequately demonstrate that the relief sought is appropriate in the peculiar circumstances of the present case.

In support of their claim of bad faith and harassment, the plaintiffs have made numerous factual allegations in their complaint. The complaint states that in Meyer v. Austin, 319 F.Supp. 457 (M.D.Fla.1970),[4] the previous Florida obscenity law, Fla.Stat. Ch. 847, § 847.011 (1967), F.S.A., was held unconstitutional and its enforcement was enjoined. After an initial stay of the lower court's injunction, the Supreme Court vacated the stay in Austin v. Meyer, 408 U.S. 919, 92 S.Ct. 2476, 33 L.Ed.2d 330 (1972). To fill the void caused by the injunction, the Florida legislature passed the obscenity law presently under attack. The effective date of the new law was June 7, 1973.

The plaintiffs allege that on June 13th, officers of the various Dade County police departments entered thirteen different adult bookstores. The officers purchased certain books and then arrested the cashier in most instances. The arrests were effected without search warrants, arrest warrants or prior adversary hearings to determine the obscene nature of the publications purchased by the officers.

At the time of the arrests, certain of the police officers, the complaint alleges,

advised the clerks that the arrests would continue until the adult bookstores were closed down. They were also told to get out of business and not return unless they wished to suffer the penalty of being rearrested many times. To stress the credibility of these warnings, the complaint notes that one bookstore, Raro, Inc., was arrested at nine o'clock in the evening. An hour later, when a relief clerk entered the store, the same police officers returned to the store and after additional purchases arrested the second clerk.

A few days after the June 13th arrests, the corporate owners of the bookstores began receiving summonses to answer to criminal charges of selling obscene materials. At about that same time, the complaint alleges, officers raided Darby Town, Inc., and seized the corporation's business records. While in the store, the officers allegedly intimidated the clerks and otherwise interfered with the business of the store.

The plaintiffs further allege that, following the Supreme Court's decision in Miller v. California, 413 U.S. 15, 93 S. Ct. 2607, 37 L.Ed.2d 419 (1973), on June 21, 1973, the various defendants made certain statements to the media to the effect that they were going to close down all of the adult bookstores in Dade County. Stores were allegedly given deadlines by which to cease their operations. The storeowners and clerks were also told to take certain materials off the shelves despite the fact that there had not been any judicial determination that the materials were obscene. The plaintiffs assert in their complaint that if the defendants had read Miller v. California, and had sought an interpretation of the Florida obscenity law in light of the Supreme Court's decision, they would have perhaps found that the state law was unconstitutional and unenforceable.

---

3. Paragraph 18 of the complaint.

4. The judgment of the three-judge court was ultimately vacated and the case was remanded for consideration in light of Miller v. Cal-

ifornia, 413 U.S. 15, 93 S.Ct. 2607, 37 L. Ed.2d 419 (1973) and its companion cases. Austin v. Meyer, 413 U.S. 902, 93 S.Ct. 3029, 37 L.Ed.2d 1017 (1973).

Finally, the complaint alleges that certain of the stores have closed "their doors" as a result of the threats and intimidation. The stores that have remained open have allegedly had to restrict the merchandise sold to the public.

Consistent with the procedural requirements set forth in Hunt v. Rodriguez, 462 F.2d 659 (5th Cir. 1972) the court set a hearing for the purpose of focusing on the question of irreparable injury. The plaintiffs did not present any evidence to substantiate their claim of bad faith and harassment.

Federal intervention in pending state court prosecutions is not a matter to be taken lightly. The unmistakable teaching of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is that the federal judiciary must be extremely sensitive to a state's legitimate interest in continuing with a prosecution of an individual who has allegedly violated a state's law. Indeed, "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." Id. at 45, 91 S.Ct. at 751. The injunction may issue only after the plaintiff has shown "the usual prerequisites of bad faith and harassment," or other unusual circumstances where the danger of irreparable injury is both great and immediate. Id. at 53, 91 S.Ct. at 755.

The Younger court's concern for the intrusive effect of federal proceedings was not limited to actions where an injunction is sought to halt a state prosecution. Both Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), and Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), decided on the same day as Younger v. Harris, supra, indicate that the court's concern was far more broad. In Samuels v. Mackell, supra, the court held that the equitable principles announced in Younger are equally applicable in actions for declaratory relief when the challenged state law is being enforced in a pending state court prosecution involv-

ing the same parties. Accord, Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L. Ed.2d 781 (1971). Similarly, in Perez v. Ledesma, supra, the court held that a federal court may not suppress evidence to be used in a state court prosecution absent a showing of bad faith harassment.

As an illustration of a situation involving bad faith and harassment, Mr. Justice Black, speaking for a majority of the Younger court, referred to Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965). In order to support their allegations of irreparable injury, he pointed out that the appellants in Dombrowski

had offered to prove that their offices had been raided and all their files and records seized pursuant to search and arrest warrants that were later summarily vacated by a state judge for lack of probable cause. They also offered to prove that despite the state court order quashing the warrants and suppressing the evidence seized, the prosecutor was continuing to threaten to initiate new prosecutions of appellants under the [allegedly unconstitutional] statutes, was holding public hearings at which photostatic copies of the illegally seized documents were being used, and was threatening to use other copies of the illegally seized documents to obtain grand jury indictments against the appellants on charges of violating the same statutes. 401 U.S. at 48, 91 S. Ct. at 752.

These facts, had they been proved, would have substantiated the appellants' charges that:

the threats to enforce the statutes against appellants are not made with any expectation of securing valid convictions, but rather are part of a plan to employ arrests, seizures, and threats of prosecution under color of the statutes to harass appellants and discourage them and their supporters from asserting and attempting to vindicate the constitutional rights of Ne-

gro citizens of Louisiana. 380 U.S. at 482, 85 S.Ct. at 1118–1119 as quoted in Younger v. Harris, 401 U.S. at 48, 91 S.Ct. at 752.

Compared to Dombrowski v. Pfister, *supra,* the factual circumstances in *Younger* did not justify the issuance of an injunction. There, the appellee, Harris, was being prosecuted in state court for allegedly violating the California Syndicalism Act. Harris brought suit in federal court to enjoin the state prosecution on the grounds that the California statute was void for vagueness and overbreadth and thus violated the First and Fourteenth Amendments. The district court found the statute unconstitutional and enjoined its enforcement. The Supreme Court reversed. Mr. Justice Black observed:

> the injury that Harris faces is solely "that incidental to every criminal proceeding brought lawfully and in good faith," [Douglas v. City of Jeannette, 319 U.S. 157, 164, 63 S.Ct. 877, 87 L. Ed. 1324 (1943)] and therefore under the settled doctrine we have already described he is not entitled to equitable relief "even if such statutes are unconstitutional," [Watson v. Buck, 313 U.S. 387, 400, 61 S.Ct. 962, 85 L. Ed. 1416 (1941)]. 401 U.S. at 49, 91 S.Ct. at 753.

Furthermore, the so-called "chilling effect" resulting from the enforcement of a statute regulating expression "should not by itself justify federal intervention." *Id.* at 50, 91 S.Ct. at 753.

Since *Younger, supra,* where bad faith and harassment has been found, one of the most important factors has been the prosecutor's commencement of the state court action without hope of success. For instance, in Shaw v. Garrison, 467 F.2d 113 (5th Cir. 1972), the defendant, Garrison, was enjoined from continuing to prosecute Clay Shaw for perjury after a previous prosecution for conspiracy to assassinate President John Kennedy ended in Shaw's acquittal. The federal court rested its decision on the grounds that: Shaw was being prosecuted for statements he made when he took the stand to testify in his own behalf; no perjury charges were lodged against state witnesses whose testimony contradicted their prior statements; there were no witnesses available to testify in the perjury prosecution who had not previously testified in the unsuccessful conspiracy prosecution; Garrison knew full well the unreliability and ineffectiveness of the state's chief witness, Perry Raymond Russo; and, the prosecutor had a financial interest in the prosecution of Shaw. 467 F.2d at 118–119.

To the same effect is Krahm v. Graham, 461 F.2d 703 (9th Cir. 1972). There an injunction was granted against prosecutions commenced against the plaintiffs who were adult bookstore owners and employees. Over a two year period, 101 prosecutions were brought against the plaintiffs. *Id.* at 705. Of the eleven cases that came to trial, none resulted in convictions. *Id.* Moreover, many of the cases involved seizures made despite a state court order that the methods used to seize the materials were illegal. *Id.* at 706. It was thus clear that the arrests, seizures, and prosecutions, were part of a successful scheme to harass the bookstore owners in bad faith and drive then out of business. *Id.* at 706–707.

The circumstances of the present case must be evaluated in light of the guidelines prescribed by Younger v. Harris, *supra,* and its progeny. At the hearing, it was incumbent upon the plaintiffs to substantiate their claim of great and immediate irreparable injury in order to justify the convocation of a three-judge court, and the exercise of the three-judge court's equitable jurisdiction to intervene in a pending state court prosecution. Hunt v. Rodriguez, *supra.* In the face of the motions to dismiss and the notice of hearing, the plaintiff did not support the factual allegations in their complaint. Under these circumstances the convocation of a three-judge court is unnecessary, and dismissal

of the requests for injunctive and declaratory relief is required.[5] However, even if the factual allegations were proved, they fall far short of compelling a finding of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." Younger v. Harris, 401 U.S. at 54, 91 S.Ct. at 755.

At the hearing, the plaintiffs expressly abandoned their plea for injunctive relief against the criminal prosecutions pending in state court but argued their entitlement to declaratory relief. This change of position did not relieve plaintiffs of their *Younger* burden of showing great and immediate irreparable injury. Samuels v. Mackell, *supra;* Dyson v. Stein, *supra;* cf. Jones v. Wade, 479 F.2d 1176 (5th Cir. 1973). To justify the equitable intervention of a federal court, the plaintiffs have advanced two theories: the events of June 13th through June 21st display a pattern of bad faith and harassment; and, these same events have caused such a grave "chilling effect" as to amount to irreparable injury.

For the plaintiffs to prevail on their claim of bad faith and harassment, the facts alleged must indicate that the pending prosecutions were commenced without an expectation of obtaining valid convictions. Accordingly, the plaintiffs have suggested that the defendants knew, or should have known, that the newly enacted Florida obscenity law[6] was unconstitutional.

However, the chronology of events, as alleged in the complaint, compels the court to conclude otherwise. In Meyer v. Austin, *supra,* the previous Florida obscenity law was declared · unconstitutional due to the failure of the law to provide for an adversary proceeding prior to the seizure of allegedly obscene materials; and, a local, rather than a national, standard was applied in determining whether materials were obscene. The three-judge court also suggested that, if the Florida legislature should choose to enact a new obscenity law, it should include, in the new definition of obscenity, the phrase, "utterly without redeeming social value." 319 F.Supp. at 469. The new definition would then be in accord with the Supreme Court's definition of obscenity in Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966). In its next attempt to proscribe obscene films and publications, the state legislature passed the law presently challenged as unconstitutional. By including the previously omitted phrase and providing for a prior adversary proceeding, the legislature appears to have made a conscious effort to adopt the *Memoirs* definition of obscenity and otherwise comply with Meyer v. Austin, *supra.*

Pursuant to the authority granted in the newly enacted law the various local law enforcement agencies on June 13, 1973 made the arrests here under attack. On the date of arrests, *no court had passed upon the constitutionality of the new law.* On June 21, 1973 the U. S. Supreme Court, in Miller v. California, *supra,* redefined obscenity. Most notably, "utterly without redeeming social value" was cast aside, and replaced by "taken as a whole, lacks serious literary, artistic, political, or scientific value." 413 U.S. at 24, 93 S.Ct. at 2615. The complaint, filed on June 27th does not contain any allegations of arrests or seizures having occurred after June 21, 1973.

Given the sequence of events, it is difficult to perceive how the local officials did know, or should have known, that the Florida obscenity law was unconstitutional. Simply stated, the legislature appears to have substantially adopted the Supreme Court's definition

---

5. Counsel for the plaintiffs has argued that they were not required to make their *Younger* showing to a single judge. Although there are cases from other circuits supporting the plaintiffs' position, Literature, Inc. v. Quinn, 482 F.2d 372 (1st Cir. 1973); Abele v. Markle, 452 F.2d 1121 (2d Cir. 1971), the court is persuaded by the Fifth Circuit's well-reasoned opinion in Hunt v. Rodriguez, *supra.*

6. Fla.Stat.Ann. Ch. 73–120, Section 2.

of obscenity, and then the Supreme Court redefined obscenity. The defendants cannot be held to have acted in bad faith simply because they were unable to predict what was then the future course of Supreme Court decisions.

It is significant that there are no allegations of arrests after the date of the *Miller* decision when the constitutionality of the Florida law became questionable. The absence of further arrests clearly indicates that the June 13th arrests were part of an effort to enforce an obscenity law having no obvious constitutional impediment.

The plaintiffs further alleged that certain comments made by individual defendants support a finding of bad faith and harassment. Since the chronology of events leads to the conclusion that the prosecutions pending against the plaintiffs were not instituted without hope of success, the statements made on June 13th and June 21st can be put in proper perspective. These comments merely expressed the intent of the law enforcement officials to enforce the law against persons whom they believed to be violating the law. In any event, the force of the comments has since been diminished. Plaintiffs' counsel has informed the court that Mr. Rivkind, the Special Assistant State Attorney in charge of the obscenity enforcement division, "has been most fair as far as going on TV and saying there will be no mass arrests and no seizures after the initial arrests occurred on June 13th."

In essence, the plaintiffs complain of arrests which occurred on a single day and statements made by various officers which have since been counter-

manded. There is no allegation of any seizures of literature presumptively protected by the First and Fourteenth Amendments or multiple prosecutions in state court. Also, the state criminal proceedings were not instituted without an expectation of securing valid convictions. As a result, a finding that the defendants have acted in bad faith and harassed the plaintiffs is clearly unwarranted.

Plaintiffs have also maintained that the facts alleged in the complaint demonstrate such a grave "chilling effect" as to amount to great and immediate irreparable injury. Since the bookstore owners and employees challenge the Florida obscenity law on its face, their argument may have been persuasive under Dombrowski v. Pfister, *supra*. However, the *Younger* court expressly limited the *Dombrowski* doctrine:

> For these reasons, fundamental not only to our federal system but also to the basic functions of the Judicial Branch of the National Government under our Constitution, we hold that the *Dombrowski* decision should not be regarded as having upset the settled doctrines that have always confined very narrowly the availability of injunctive relief against state criminal prosecutions. 401 U.S. at 53, 91 S.Ct. at 755.

Where, as here, the "chilling effect" is incidental to the good faith enforcement of a law "regulating a subject within the State's power,"[7] it does not justify the intervention of a federal court in pending state court criminal prosecutions. Younger v. Harris, *supra*.[8]

7. 401 U.S. at 52, 91 S.Ct. at 754. Miller v. California, *supra*, reaffirms the power of the state to proscribe obscenity.

8. Whatever "chilling effect" there may have been, due to uncertainty as to the application of the Florida law, is presently being reduced by the process of judicial interpretation in the state courts. *See, e. g.* Papp v. Florida, 281 So.2d 600, (Fla.Dist.Ct.App., 1973). Since counsel for both the plaintiffs and the defendants have indicated that the

prosecutions of the bookstore owners and employees are proceeding promptly to trial, further interpretations of the statute are imminent. Permitting this process to continue, rather than enjoining it, is by far the more preferable means of eliminating the "chilling effect." As Mr. Justice Black pointed out in Younger, "the chilling effect can not be satisfactorily eliminated by federal injunctive relief." 401 U.S. at 51, 91 S. Ct. at 753.

■ Therefore, assuming the truth of the plaintiffs' factual allegations, a finding of great and immediate irreparable injury is not justified. In the absence of a basis for federal equitable intervention, a three-judge court need not be convened to consider the challenge to the constitutionality of the Florida obscenity law.

■ Insofar as the plaintiffs have also contested the validity of the Dade County obscenity ordinance, their attack is premature. The new state obscenity law expressly pre-empts any local laws dealing with the subject. Fla.Stat.Ann. Ch. 73–120, § 3. For the local ordinance to become enforceable, the state law must be declared unconstitutional. *Id.* Furthermore, the enforcement of the ordinance would require the prosecutor to overlook the great similarity between the definitions of obscenity in the state and local laws.[9] In view of the court's finding on the question of bad faith harassment, and the lack of any present threat of enforcing the ordinance, the plaintiffs do not stand in a position to suffer the requisite degree of irreparable injury. Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971). The challenge to the ordinance should thus be dismissed.

The plaintiffs have claimed damages for the alleged deprivations of their First Amendment rights of free speech and expression, Fourth Amendment right to be free from unreasonable searches and seizures, and their Fifth Amendment rights to due process and protection from vague and indefinite criminal prosecutions. The various defendants have made motions to dismiss the damage claim.

■ To the extent that the bookstore owners have sought damages against defendants, Lee and Rubiera, the complaint must be dismissed. Defendant Lee is Chief Judge of the Eleventh Judicial Circuit in and for Dade County, and defendant Rubiera is Chief Judge of the Crimes Division of the County Court for Dade County. As judges, they enjoy the cloak of official immunity and are not actionable for damages under 42 U.S.C. § 1983. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Guedry v. Ford, 431 F.2d 660 (5th Cir. 1970).

■ The claim for damages against the State Attorney, Gerstein, and his assistants, Rivkind and Schwarz, must likewise be dismissed. Each defendant has been sued in his official capacity as a prosecutor. The complaint does not contain any allegations that they personally acted outside of the scope of their jurisdiction or in a manner not authorized by law. Consequently, the defendants, Gerstein, Rivkind and Schwarz are immune from damages. Madison v. Gerstein, 440 F.2d 338 (5th Cir. 1971).

■ With respect to the claim for damages against defendant Garmire, Chief of Police of the City of Miami, and defendant Purdy, Director of the Dade County Public Safety Department, the complaint must be dismissed for failure to state a claim. These individuals have been sued in their respective official capacities. It is nowhere alleged that the defendants personally directed or participated in the actions taken against the plaintiffs. Madison v. Gerstein, *supra.*

■ The damage claim against defendant Kennedy, the officer in charge of the Vice Squad of the Dade County Public Safety Department, must be dismissed for failure to state a claim. An officer cannot be held liable for damages for the deprivation of the plaintiffs' First Amendment rights merely because the officer in good faith enforces a law—"regulating a subject within the State's power"—which has the incidental effect of inhibiting First Amendment rights, and has not been held unconstitutional. *Cf.* Pierson v. Ray, *supra.* Nor can he be actionable for damages for the good faith enforce-

9. Compare the definitions of obscenity, *supra* notes 1 and 2.

ment of an allegedly overbroad statute which has not been invalidated. *Id.*

Although the defendant Herman has not moved for dismissal, he is in the same relative position as the defendant Kennedy and, consistent with the holding of this opinion, the complaint is dismissed as to said defendant. Therefore, it is

Ordered and adjudged that the claims for injunctive and declaratory relief in the above-styled action be and the same are hereby dismissed. It is further

Ordered and adjudged that the claims for damages against the defendants be and the same are hereby dismissed.

Done and ordered in chambers at the United States District Courthouse, Miami, Florida, this 14th day of September, 1973.